# In the United States District Court for the Southern District of Georgia Brunswick Division

ARTHUR B. CARLSON and ARLENE J. CARLSON,

    Plaintiffs,

vs.

BRGA ASSOCIATES, LLC and BRUNSWICK HOTEL PARTNERS,

    Defendants.

CV 213-170

## ORDER

This premises liability case concerns a hotel jewelry heist. The thief was never caught, and the jewels are still missing, presumably forever. Plaintiffs Arthur and Arlene Carlson claim that the hotel's failure to remedy a known burglary risk by improving security measures at the hotel amounts to negligence, making its owners and managers liable for their loss. Conversely, Defendants BRGA Associates LLC and Brunswick Hotel Partners argue that Plaintiffs recognized, discussed, and fretted over the risk of leaving Mrs. Carlson's jewelry unattended in their hotel room before choosing to accept that risk. This unheeded premonition, Defendants claim, shows

1

that Plaintiffs assumed the risk of theft and thus are barred from bringing their claims against Defendants.

Defendants have filed a Motion for Summary Judgment (Dkt. no. 22) that brings the question of who is to bear liability for the loss before the Court. Defendants have also filed a Motion to Exclude or Limit the Opinions of Kim C. Scott, Plaintiffs' expert gemologist who appraised the stolen jewelry. Dkt. no. 25. Because the undisputed facts, as a matter of law, show that Plaintiffs assumed the risk of theft when they knowingly left their jewelry unattended in the hotel room, the Court **GRANTS** Defendants' Motion for Summary Judgment, thus rendering the Motion to Exclude **MOOT**.

### FACTUAL BACKGROUND

On November 5, 2012, Plaintiffs Arthur and Arlene Carlson were traveling from one home in New Jersey to another home in Florida. Dkt. no. 21-10 ("Mrs. Carlson Dep."), 13:5-20; Dkt. no. 21-9 ("Mr. Carlson Dep."), 28:4-8. Having stayed at the Brunswick Park Hotel before, they decided to stop there for the evening once again. Mrs. Carlson Dep. 22:1-5. After arriving at the hotel, Plaintiffs checked in and took their luggage and dog to their room. Id. at 24:15-26:7. Among the luggage was a backpack in which Mrs. Carlson carried about 95 percent of all the jewelry she owned. Id. at 16:24-17:5.

AO 72A
(Rev. 8/82)

Once they were in the room, Mr. Carlson began to inspect a safe that the hotel had provided guests to secure their valuables. However, the Carlsons ultimately elected not to pursue use of the safe. While Mr. Carlson did spend some time trying to open the safe after Plaintiffs first checked into their room, he was unable to do so. Mr. Carlson Dep. 38:8-11. Rather than contact the front desk to ask for assistance with the safe, Plaintiffs decided that Mrs. Carlson would simply take her backpack of jewelry with her to dinner. Id. at 38:24-39:22.

Plaintiffs then fed their dog and tried to place it in its crate so they could leave for dinner. Mrs. Carlson Dep. 26:8-14. However, the dog did not want to stay in the crate and became upset. Id. After Plaintiffs got the upset dog in its crate, they left the room so quickly that Mrs. Carlson forgot to take her backpack with her. Id. Mrs. Carlson says this oversight was an "accident," as her usual custom is to keep her jewelry bag on her person when she travels. Id. at 20:11-13; 25:24-26:4.

Mrs. Carlson realized that she had left her backpack in the room when she and her husband were at the hotel elevator on their way out of the hotel. Id. at 33:24-34:10; Mr. Carlson Dep. 39:19-22. Mrs. Carlson said to her husband that she "had forgotten [her] backpack and [she] was going back to get it." Mrs. Carlson Dep. 33:24-33:5. Mr. Carlson replied, "[n]o, we're going to dinner; the dog will get upset again, don't go back."

Id. Mrs. Carlson's "exact words to him" were "[i]f there's anything missing it's going to cost you a hell of a lot of money." Id. Mr. Carlson, knowing that all of Mrs. Carlson's jewelry was in the backpack, concluded the conversation by saying "[w]hat can happen in 45 minutes?" Id. The couple then walked to a restaurant for dinner, where Mrs. Carlson spent the meal worrying about the jewelry that she had decided to leave in the hotel room. Id. at 35:1-8.

When the Carlsons returned to their room after dinner, Mrs. Carlson immediately went to her backpack to check the jewelry. Id. at 46:15-24. She opened the bag and noticed that almost all of her jewelry, except for a few pieces, was gone. Id. She became very upset, telling her husband "I told you so." Id. at 46:25-47:3.

Similar thefts had occurred at the hotel 13 months before the theft of the Carlsons' jewelry.[1] However, no one was aware of any thefts of any items from the hotel rooms for more than a year prior to the Carlson incident. The prior thefts all occurred when Defendant Brunswick Hotel Partners, which owns the hotel, was also responsible for its management. In January of 2012, Defendant Brunswick Hotel Partners defaulted on its loan,

---

[1] Defendants object to the use of police reports that form the basis of this evidence and most of the information regarding prior thefts discussed here. However, because the Court ultimately concludes that this evidence does not create an issue of material fact regarding Defendants' liability in this case, the Court will include the evidence as facts considered in the most favorable light to Plaintiffs.

and Defendant BRGA Associates was appointed to serve as Receiver for the hotel property. See generally Dkt. no. 21-4 (Court Order Appointing Receiver). Defendant BRGA Associates was managing the hotel when Plaintiffs' jewelry was stolen on November 5, 2012.

**LEGAL STANDARD**

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case.

Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

For premises liability cases in Georgia, "the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and [] summary judgment is granted only when the evidence is plain, palpable, and undisputed." Robinson v. Kroger Co., 493 S.E.2d 403, 414 (Ga. 1997).

**ANALYSIS**

Georgia law provides that "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." Ga. Code Ann. § 51-3-1. Plaintiffs argue that each Defendant failed to take appropriate remedial measures to mitigate the risk of burglaries during their stints in operating the hotel. In their response to Defendants' Motion for Summary Judgment, Plaintiffs point out several facts in the record that they claim create an issue of material fact as to each Defendant's breach of its duty of care to business invitees.

However, Defendants raise Plaintiffs' assumption of the risk as an affirmative defense.

I. **Assumption of the Risk**

In Georgia,

> The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that he without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not.

Vaughn v. Pleasent, 471 S.E.2d 866, 868 (Ga. 1996) (quotations omitted). Whether a party assumed the risk of injury is generally a question for the jury, but summary judgment is appropriate when the defense is "conclusively established by plain, palpable and undisputed evidence." Turner v. Sumter Self Storage Co., 449 S.E.2d 618, 621 (Ga. Ct. App. 1994).

A defendant asserting the assumption of the risk defense bears the burden of proving that the plaintiff "(1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks." Vaughn, 471 S.E.2d at 868. The knowledge requirement refers to a subjective knowledge of "the specific, particular risk of harm associated with the activity or condition that proximately causes injury." Id. It does not refer to "a plaintiff's comprehension of general, non-specific

risks that might be associated with such conditions or activities." Id.

Georgia courts will grant a defendant's motion for summary judgment on the assumption of the risk defense where the plaintiff knew of a particular risk before choosing to "test[] the danger." See Desai v. Silver Dollar City, Inc., 493 S.E.2d 540, 545 (Ga. Ct. App. 1997). In Desai, a plaintiff was injured when she stepped out of her raft into a pool of water at the end of an amusement park water ride. Id. at 542. The plaintiff had participated in the ride several times before, and had previously noted the posted and announced warnings that participants should wait in their rafts at the end of the ride until a lifeguard helps them out of the raft. Id. On this occasion, though, the plaintiff chose to exit her raft and help her elderly mother out of another raft rather than wait for the help of a lifeguard, even though there was no reason or urgency pressing her not to wait. Id. at 543. In holding that the plaintiff had assumed the risk as a matter of law, the court noted that "even though [plaintiff] was warned do not do this or you might get hurt, [plaintiff] tested the danger until she was hurt. It defies both logic and our law to permit a recovery under this evidence." Id. at 545. The court further held that none of the defendant amusement park's possible acts of negligence altered the assumption of the risk analysis because

"the obvious fact remains that none of these acts would have resulted in [plaintiff's] injury if she had remained in the raft as she was instructed. It is not the individual acts of negligence to which one must consent, but the known risks arising from the chosen acts or omissions of the plaintiff." Id.

Similarly, the Georgia Court of Appeals has held that an experienced ice skater had assumed the risk of a head injury when he voluntarily entered a skating rink and was knocked onto the ice by an inattentive child. Fowler v. Alpharetta Family Skate Center, LLC, 601 S.E.2d 818, 820 (Ga. Ct. App. 2004). In Fowler, the plaintiff had evinced his knowledge of the risk of head injuries from skating when he attempted to rent a helmet to protect his head before entering the skating rink on the day he was injured. Id. "His own testimony show[ed] that [the plaintiff] not only knew of the dangers of ice skating, including colliding with another skater, but that he appreciated that he needed protection for his head in the event he fell." Id. Additionally, the court noted that even if the defendant skating company had negligently failed to have skate guards on the ice monitoring the other skaters, the assumption of the risk analysis contemplates a subjective knowledge standard based on what the plaintiff knew, understood, and appreciated. Id. Georgia law "does not require that [the plaintiff] must have consented to the individual acts of negligence, but that he

AO 72A
(Rev. 8/82)

consented to the known risks arising from his choosing to skate." Id.

Georgia courts have also discussed the assumption of the risk defense as it relates to risks posed to plaintiffs from third parties in premises liability cases. For example, in Borders v. Board of Trustees, VFW, 500 S.E.2d 362 (Ga. Ct. App. 1998) the Georgia Court of Appeals held that the plaintiff's general awareness of "the possibility that drunken patrons may be present" at defendant VFW's dance was not specific enough to establish that she assumed the risk that a drunken dancer would stagger into her and knock her to the floor, breaking her foot, leg, and fracturing her hip. 500 S.E.2d at 365. Similarly, the Georgia Court of Appeals ruled in FPI Atlanta, L.P. v. Seaton, 524 S.E.2d 524 (Ga. Ct. App. 1999) that a plaintiff did not assume the risk of being assaulted by intruders in the defendant's apartment complex when she was tricked into opening her apartment door for the assailants because "she lacked subjective knowledge of the risk of danger and had only a general awareness of a potential risk" as a result of the deception. 524 S.E.2d at 530.

Here, Plaintiffs had actual knowledge of the danger that Mrs. Carlson's jewelry could be stolen while they were out to dinner. Plaintiffs specifically stopped at the elevator before they left the building to discuss the possibility of a theft.

After her husband convinced her not to go back for her jewelry, Mrs. Carlson told him "[i]f there's anything missing it's going to cost you a hell of a lot of money." Furthermore, Plaintiffs' knowledge was not of some vague possibility of criminal activity, but rather of the specific risk that someone would enter their room without authorization and steal Mrs. Carlson's jewelry. Unlike the plaintiff in <u>Borders</u> who knew that drunken dancers could potentially be on the premises, Plaintiffs were not worried about the mere possibility that unsavory persons would be on the hotel premises, but rather about the specific risk that such a person would steal Mrs. Carlson's jewelry. Similarly, unlike the plaintiff in <u>FPI Atlanta</u> who was tricked into opening her apartment door, there was no deception here that caused Plaintiffs to assume a different risk than the one that actually transpired.

Plaintiffs in this case are more like the plaintiffs in <u>Desai</u> and <u>Fowler</u>. Just as the experienced skater in <u>Fowler</u> knew of the risks of collision and head injuries while ice skating without having to be warned, Plaintiffs in this case knew of the specific danger that someone could enter their hotel room while they were away and steal the jewelry that was not locked away. Furthermore, Plaintiffs' conversation before leaving the hotel about the risk of theft, which Mr. Carlson concluded by asking "what can happen in 45 minutes?", shows that Plaintiffs, like

AO 72A
(Rev. 8/82)

the plaintiff in <u>Desai</u>, "tested the danger" until the assumed risk came to pass. And like the plaintiff in <u>Desai</u>, there was no pressing reason for Plaintiffs not to go back to the room to get the jewelry and take it with them to dinner—a precaution that Plaintiffs acknowledge would have prevented their loss. Plaintiffs weighed the risk of theft against the inconvenience of disturbing their dog and delaying their meal for a few minutes, and they chose to head to dinner rather than secure the jewelry. In light of their informed and calculated decision, Defendants cannot be held liable when Plaintiffs tested the risk of theft and that risk came to pass.

Plaintiffs have argued that they did not assume the risk of theft because they, unlike Defendants, were unaware of the prior thefts that had occurred on the property more than a year before and thus did not have a full appreciation of the risk they took by leaving the jewelry in the hotel room. Acknowledging that the case did not specifically address the assumption of the risk defense, Plaintiffs point to <u>Wilks v. Piggly Wiggly Southern, Inc.</u> for the proposition that a plaintiff does not have superior knowledge of the risk of criminal activity simply where the plaintiff has a "gut feeling" that criminal activity may be afoot, especially when the defendant was aware of similar prior criminal acts on the property. 429 S.E.2d 322, 324 (Ga. Ct. App. 1993). Plaintiffs argue that, here, the string of prior thefts

gave Defendant Brunswick Hotel Partners actual knowledge of the risk of theft, and that Defendant BRGA Associates, who was operating the hotel as Receiver when Plaintiffs' jewelry was stolen, thereby had constructive knowledge of that risk. In sum, Plaintiffs argue that both Defendants had a superior knowledge of the risk of theft in their hotel that Plaintiffs themselves did not enjoy. If Plaintiffs, like Defendants, had known of these prior thefts, they claim that they would not have left the jewelry unsecured in the hotel room. Therefore, Plaintiffs contend, they did not assume the risk of the theft.

Plaintiffs' argument is nuanced, but its thrust—that Plaintiffs did not assume the risk of theft—should not be confused with the separate premises liability analysis conducted in Wilks. The question at issue in Wilks was whether the plaintiff had superior knowledge of a risk of being attacked after having a "gut feeling" that loiterers outside a business were "up to something" before the loiterers did, in fact, attack him. Id. This question informs the legal analysis for determining whether a premises occupier exercised ordinary care in keeping the premises safe from the criminal acts of third parties. See B-T Two, Inc. v. Bennett, 706 S.E.2d 87, 92 (Ga. Ct. App. 2011) (holding that an owner or occupier must protect invitees from the reasonably foreseeable criminal acts of third parties, but only when the owner or occupier has superior

knowledge of that danger). Here, though, Plaintiffs are applying Wilks's discussion of "superior knowledge" to an assumption of the risk context to argue that a plaintiff cannot be said to have assumed the risk where he did not have as complete an understanding of that risk as the defendant, whose failure to mitigate that risk was allegedly negligent.

Plaintiffs' theory of assumption of the risk is novel. This Court is not aware of any Georgia courts having balanced a plaintiff's knowledge of the risk against a defendant's in a premises liability assumption of the risk analysis. However, there are at least two reasons why this Court will not adopt this theory.

First, such "knowledge balancing" unduly shifts the focus of the assumption of the risk analysis from the plaintiff's knowledge to the defendant's. Fowler and Desai, though, instruct that the focus of this question is on the *plaintiff's* knowledge of the risk, and not the defendant's. "It is not the individual acts of negligence to which one must consent, but the known risks arising from the chosen acts or omissions of the plaintiff." Desai, 493 S.E.2d at 545; see also Fowler, 601 S.E.2d 818, 820-21 (analyzing an assumption of the risk defense by asking whether the plaintiff assumed the risks associated with his chosen course of conduct rather than the risks posed by the defendant owner or occupier's negligence). Thus, the

AO 72A
(Rev. 8/82)

parties' relative knowledge of the risk is relevant in assessing Defendants' negligence, but not in assessing Plaintiffs' assumption of the risk.

Second, while there is no evidence in the record before the Court that Defendants explicitly shared their alleged knowledge of these prior thefts with the Plaintiffs, the presence of a safe in Plaintiffs' room should have indicated to them that theft of personal belongings was a conceivable risk. The presence of the safe, of course, would not alert Plaintiffs to the fact that a theft had occurred at the hotel some 13 months prior, but it would alert them to the fact that "not all conceivable risks had been removed." See Ritz Carlton Hotel Co. v. Revel, 454 S.E.2d 183, 186 (Ga. Ct. App. 1995). This knowledge of the specific risk of theft is the key factor underlying Plaintiffs' assumption of the risk, not the Defendants' knowledge of thefts in the remote past. Plaintiffs may not have known of the hotel's rather dated history with theft, but they did know of the general risk of theft, and that is the risk they assumed.

True, summary judgment based on assumption of the risk is rare, but it is possible in a clear case. Here, Mrs. Carlson's exact fears came true. She meant to keep her jewels with her so they would not be stolen from the hotel room. She recognized the risk she ran if she proceeded to dinner, but she elected to

AO 72A
(Rev. 8/82)

15

accept that risk so as not to disturb her dog. There is no evidence to the contrary. Her appreciation of the risk and warning to her husband are plain, palpable and prescient.

**II. Remaining Issues**

Because this Court must find that the Plaintiffs assumed the risk of theft as a matter of law, the Court need not address the remaining issues of Defendants' liability, jointly or separately.

**CONCLUSION**

Because Plaintiffs assumed the risk that their jewelry would be stolen from their hotel room, they are barred from bringing this action against Defendants, and Defendants' Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**, this 22ND day of January, 2015.

---

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA